UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENNADIY VOLODARSKIY and OXANA VOLODARSKAYA on behalf of themselves, their minor children, all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>Defendant. | No. 11 C 00782<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Gennaldiy Volodarskiy, Oxana Volodarskaya, and their minor children (together, "the Volodarskiys") brought this putative class action lawsuit against Defendant Delta Air Lines for breach of contract based on Delta's failure to comply with Regulation No. 261/2004 of the European Parliament and European Council (EU 261), which Plaintiffs allege was incorporated into Delta's International Conditions of Carriage.[1] Four other cases founded on similar allegations have been filed in this district by the same plaintiffs' counsel against other airlines. *See Polinovsky v. British Airways PLC*, No. 11 C 779; *Polinovsky v. Deutsche Lufthansa AG*, No. 11 C 780; *Gurevich v. Compagnia Aereas Italiana, SPA*, No. 11 C 1890; *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, No. 11 C 775. Delta now moves to dismiss Plaintiffs' complaint pursuant Federal Rules of Civil Procedure 12(b)(6). For the following reasons, Delta's motion [R. 17] is granted.

---

[1]Jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

## I.

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the Volodarskiys' favor. *Ashcroft v. al-Kidd*, ⎯⎯ U.S. ⎯⎯, 131 S. Ct. 2074, 2079 (2011). Plaintiffs Gennaldiy Volodarskiy and his wife Oxana Volodarskaya are Illinois residents who purchased tickets to travel with their children from London's Heathrow Airport to Chicago O'Hare Airport on August 17, 2009. R. 1, Compl. ¶¶ 5, 21. They were confirmed passengers on Delta Flight #DL89, which ended up being delayed at Heathrow for over 8 hours. *Id.* ¶ 22. The Volodarskiys were not informed of this delay any time before the scheduled departure time, and received no compensation from Delta for the delay. *Id.* ¶¶ 23, 25.

The Volodarskiys allege that they were entitled to compensation for this delay under a European Union regulation, known as EU 261, which applies to passengers with confirmed tickets on flights departing from or arriving to airports located in EU member states. EU 261 provides passengers on qualifying flights that are cancelled with a set amount of compensation so long as the cancellation was not caused by unavoidable extraordinary circumstances.[2] *Id.* ¶¶ 9, 10. Although EU 261 does not explicitly provide compensation for flight *delays*, as potentially distinct from

---

[2] However, passengers are not entitled to compensation if they are informed of the cancellation (1) at least two weeks before the scheduled departure time; (2) between two weeks and seven days before the scheduled departure time and are offered rerouting allowing them to depart no more than two hours before the scheduled departure time and to arrive at their final destination no more than four hours after the scheduled arrival time; or (3) within seven days of the scheduled departure time and are offered rerouting allowing them to depart no more than one hour before the scheduled departure time and to arrive at their final destination no more than two hours after the scheduled arrival time. These exceptions do not apply to the Volodarskiys because they were not informed of the delay before the scheduled departure.

2

*cancellations*, the European Court of Justice (ECJ) has interpreted EU 261 to treat delays longer than three hours as functionally equivalent to cancellations for purposes of compensation. Cases C-402/07 & C-432/07, *Sturgeon v. Condor Flugdienst GmbH*, 2009 E.C.R. I-10923.

The Volodarskiys claim that Delta is required to comply with EU 261 because Delta's International Conditions of Carriage, which govern Delta's international flights, allegedly incorporate EU 261 by reference. Compl. ¶ 38. Specifically, the Volodarskiys contend that incorporation of EU 261 arises from Rules 1(B)(4), 55, and 87 of Delta's International Conditions of Carriage, as well as a document entitled, "European Union – Notice of Your Rights in the Event of Flight Delay or Flight Cancellation," which is posted on Delta's website. *Id.* ¶¶ 16, 17. Because the Volodarskiys did not receive compensation for their delayed flight, they claim that Delta violated its International Conditions of Carriage, and filed this putative class action for breach of contract. *Id.* ¶ 39.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on

3

technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen a ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III.

In moving to dismiss the Volodarskiys' breach of contract claim, Delta advances several arguments. First, Delta contends that its flight-services contract with the Volodarskiys confers no right to compensation because it does not incorporate, as a matter of law, EU 261. Second, and in the alternative, Delta asserts that the Volodarskiys' claim is preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b). Third, Delta argues that dismissal is appropriate because the Volodarskiys have failed

4

to exhaust all other available remedies in the EU prior to filing suit in the United States. As explained below, the first two grounds require dismissal of the complaint.

**A.**

Delta first argues that the Volodarskiys have failed to state a claim upon which relief can be granted because Delta had no contractual obligation to compensate the Volodarskiys for their flight delay. It is undisputed that the terms of Delta's contract with its international passengers, as outlined in Rule 1(A) of Delta's International Conditions of Carriage, are set forth in (1) the passengers' tickets, (2) the Conditions of Carriage, and (3) Delta's published fare rules and regulations. Compl. Exh. 2 at 2. It is also undisputed that nothing in the contract itself explicitly adopts EU 261 or its compensation requirements.[3] What is in dispute is whether the contract incorporates EU 261 by reference, thereby requiring Delta to compensate its international passengers for cancellations and delays in accordance with the EJC's *Sturgeon* decision. Thus, whether the Volodarskiys have alleged a valid breach of contract claim

---

[3]On this point, Delta's contract is distinguishable from the airline contracts litigated in two otherwise similar cases in this District, *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, No. 11 C 775, and *Polinovsky v. Deutsche Lufthansa AG*, No. 11 C 780. In *Giannopoulos*, EU 261 was explicitly incorporated into Iberia's passenger contract, which stated that "[a]s established in [EU 261], compensation is fixed in the event of a flight cancellation unless the latter is due to extraordinary circumstances." *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, 2011 WL 3166159, at *2 (N.D. Ill. July 27, 2011). Similarly, in *Polinovsky v. Deutsche Lufthansa AG*, Judge Coleman found that Lufthansa's Conditions of Carriage explicitly incorporated EU 261 because the Conditions stated that "[i]n the case of a flight cancellation or flight delay, we offer assistance and compensation to the concerned passengers according to [EU 261]." 2012 WL 1080415, at *3 (N.D. Ill. Mar. 30, 2012).

against Delta turns on whether the contract incorporates EU 261 by reference.[4] As explained below, even assuming all of the factual (as distinct from legal) allegations are true, as a matter of law the contract does not incorporate EU 261.

Under Illinois law, a document is incorporated by reference into a contract only if the contract reflects the parties' intent to incorporate the document and make it part of the contract. *Wilson v. Wilson*, 577 N.E.2d 1323, 1329 (Ill. App. Ct. 1991). If so incorporated, those additional provisions become as much part of the contract as if they were expressly written in it. *Id.* (internal citations omitted). The intent to incorporate another document into a contract must be clear and specific. *See, e.g.*, *Jago v. Miller Fluid Power Corp.*, 615 N.E.2d 80, 82 (Ill. App. Ct. 1993) ("The parties to a contract may incorporate by reference another document if that intention is clearly shown on the face of the contract.").

Here, the Volodarskiys rely on three provisions in Delta's Conditions of Carriage, as well as one document posted on Delta's website, to argue that Delta intended to incorporate EU 261. First, the Volodarskiys point to Rule 1(C)(4) of the Conditions of Carriage, which states that the "Conditions of Carriage are applicable except to the

---

[4]To state a breach of contract claim under Illinois law, the Volodarskiys must plead that (1) they had a valid and enforceable contract with Delta; (2) the Volodarskiys performed under the contract; (3) Delta breached the contract; and (4) the Volodarskiys suffered injury as a result of Delta's breach. *See Henderson-Smith & Assoc., Inc. v. Nahamani Family Service Center, Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001). The only issue in dispute is the first element: whether Delta had a valid, enforceable contract with its passengers that required—via incorporation by reference—compliance with EU 261. If so, then Delta's failure to compensate the Volodarskiys for the delay of Delta Flight #DL89 constitutes a breach of contract.

6

extent that they are contrary to applicable laws, government regulations, or orders, in which event the contrary law, regulation or order shall prevail." Compl. Exh. 2 at 2. But this Rule does not reflect an express intent to incorporate EU 261 into the contract. Rather, Rule 1(C)(4) simply provides that where the applicable law conflicts with the terms of the Conditions of Carriage, the governing law shall, not surprisingly, prevail over the contract terms. It is one thing for a law to trump a contract's contrary terms; it is quite another to consider the law as *incorporated* into the contract as if the law were itself one of the contract's terms (instead of merely prevailing over a conflicting term). To hold otherwise would equate a violation of a statute or regulation into a breach of contract, in addition to a violation of the law itself. It is true that a contract can state that a law's provisions are incorporated into the contract itself, as some courts have found as to other airlines' contracts, *see supra* n. 3, but Rule 1(C)(4) in Delta's contract says only that the contrary law "prevails," so violations of the law can be pursued as what they are—violation of the law—but not as a breach of contract.

Second, the Volodarskiys assert that EU 261 can be incorporated through Rule 55 of the Conditions of Carriage. Rule 55 expressly incorporates the liability rules of the Montreal Convention, and provides that any provisions of Delta's contract which "may be contrary to a law, government regulation, order or requirement which severally cannot be waived by agreement of the parties . . . shall remain applicable and be considered as part of the contract of carriage to the extent only that such provision is not contrary thereto." Compl. Exh. 2 at 32. But Rule 55 concerns only the Montreal Convention, not EU 261, so Rule 55 expresses no intent to incorporate EU 261 into the

7

contract. Moreover, like Rule 1(C)(4), Rule 55 merely nullifies any contract terms that conflict with applicable laws, regulations, orders, and agreements, and does not incorporate conflicting laws into the contract.

Third, the Volodarskiys rely on Rule 87 of the Conditions of Carriage, which states that "[i]n the event that an involuntary denial of boarding . . . occurs outside the United States of America, and local law applicable at the location of the denied boarding requires a payment of compensation for denied boarding in excess of that set forth in this Rule, Delta will pay the minimum compensation required and in the manner prescribed by local law." *Id.* at 57. The Volodarskiys contend that they were "denied boarding" at Heathrow when their flight was delayed, and thus under Rule 87, they are entitled to compensation as prescribed by EU 261, the governing local law. Their interpretation of "involuntary denial of boarding"—which equates that term with a delay (or a delay so long that it constitutes a cancellation)—flies in the face of that term's plain meaning, and the context of other provisions in the contract. It is clear from Rule 87 that an "involuntary denial of boarding" does not encompass situations where passengers are simply denied boarding at the original scheduled time of departure. Rather, the term only contemplates situations in which Delta has oversold a flight and the ticket holder is unable to board the flight at all. *See, e.g.*, Compl. Exh. 2 at 53 ¶ C ("Delta may involuntary [sic] deny boarding to one or more passengers *on the oversold flight* according to the following boarding priority rules") (emphasis added); *id.* at 55 ¶ E ("When a passenger with a confirmed reservation is involuntarily denied boarding *on an oversold flight* . . . Delta's sole liability to the passenger shall be

8

to provide alternative transportation . . . and to pay denied boarding compensation, if applicable, pursuant to the terms and conditions of this rule.") (emphasis added). Unlike passengers whose flights are delayed, passengers who are involuntarily denied boarding are simply left behind, even though their flights take off.[5] Because someone is only "involuntarily denied boarding" when a flight is oversold, Rule 87 does not apply to cancellations or delays. Accordingly, Rule 87 does not express a clear intent to incorporate EU 261.

Aside from the provisions found in the Conditions of Carriage, the Volodarskiys' primary contention is that Delta's own rules and regulations reflect an intent to incorporate EU 261. The Volodarskiys argue that Delta's "published fare rules and regulations" include Delta's internal, unilaterally-drafted provisions that are posted on Delta's website. Specifically, the Volodarkiys argue that a document entitled "European Union – Notice of Your Rights in the Event of Flight Delay or Flight Cancellation" ("EU Notice") and posted to Delta's website constitutes a "regulation" and is thus part of Delta's flight-services contract.[6] Delta's EU Notice states that "[t]his notice contains information about your rights established by European Union regulation in the event that you have a confirmed reservation on a flight greater than 3,500 kilometers distance and your flight is delayed beyond its scheduled departure

---

[5]Flight cancellations are also distinguishable from an "involuntary denial of boarding," because there the flight itself never occurs. In other words, passengers are not "denied boarding," because there is no longer any flight to board.

[6]Plaintiffs claim that the EU Notice was originally posted at www.delta.com/exitEU, Compl. ¶ 17, but has subsequently been replaced with a new document setting forth passengers' rights related to EU 261 when flights from Europe are cancelled or delayed.

9

time . . . or your flight is cancelled." Compl. Exh. 3 at 1. The Volodarskiys contend that Delta's EU Notice is incorporated into Delta's passenger contract because Delta's electronic tickets directly hyperlink to Delta's website, where the notice is posted. R. 32, Pl.'s Resp. Br. at 7.

This argument is unavailing. As a threshold matter, the plain language of the "rules and regulations" comprising Delta's passenger contract does not encompass the EU Notice posted on Delta's website. Rule 1(A) of Delta's Conditions of Carriage states that the terms of Delta's contract can be found in the ticket, the Conditions of Carriage, and Delta's "published *fare* rules and regulations, which may govern the calculation of the fare and other charges that apply to your itinerary." Compl. Exh. 2 at 2 (emphasis added). By its own definition, only Delta's published *fare* rules and regulations are included in Delta's contract. It follows, then, that Delta's rules and regulations that are not related to fare calculations are excluded from Delta's contract (or at least not incorporated by the incorporation of fare rules and regulations). Here, even assuming that Delta's EU Notice is a "regulation," it cannot be considered a *fare* rule or regulation that is part of Delta's contract. Indeed, the EU Notice says nothing about how fares are calculated, but only provides remedies in the event a flight is delayed or cancelled. Compl. Exh. 3. Accordingly, the Court holds that, as a matter of law, Delta's EU Notice is not the type of "regulation" that was intended to be part of Delta's passenger contract.

The Volodarskiys' incorporation argument is further flawed because they have alleged no facts showing that they purchased e-tickets for their trip from London to

Chicago. The electronic ticket submitted by Plaintiffs as Exhibit 13 to their Response Brief does not list the Volodarskiys as passengers, and appears to be for a completely different flight than the one for which the Volodarskiys are demanding compensation. *See* Pl.'s Resp. Br. Exh. 13 at 1. In fact, the e-ticket submitted by Plaintiffs is for an October 20-25 round-trip itinerary from New York City to Athens, Greece, not the August 17 flight from London to Chicago on which the Volodarskiys were delayed. *Id.* Without any allegation that the Volodarskiys held electronic tickets for their flight from London, there can be no inference that the Volodarskiys' tickets intended to incorporate the regulations posted on Delta's website.

But even assuming that the Volodarskiys did hold an electronic ticket for their flight from London to Chicago, the complaint does not sufficiently allege that Delta intended to incorporate the EU Notice into the ticket via hyperlink. There are several hyperlinks on the e-ticket to Delta's website—including links to Delta's conditions of carriage, limits on liability for personal injuries, right to change terms of the contract, check-in requirements, limits of liability for delay or failure to perform service, and policy on overbooking flights—but none of them links directly to the EU Notice. *See id.* at 4. Accepting the Volodarskiys' argument would mean that a hyperlink from the e-ticket to Delta's website is sufficient to establish an intent to incorporate any other regulations or documents that may be posted on the website, not just those policies or regulations that are directly linked (if those themselves are even incorporated; a website link is an impermanent way to enshrine a contract's terms). This is an expansive view of the incorporation doctrine, and one not grounded in Illinois contract

11

law. The intent to incorporate another document into a contract must be clear on the face of the contract. *See, e.g.*, *Jago*, 625 N.E.2d at 82. Had the e-ticket contained a direct hyperlink to the EU Notice on Delta's website, the Volodarskiys might be able to make a colorable allegation of intent to incorporate. But where, as here, there is merely a hyperlink to other pages on Delta's website, there can be no intent to incorporate documents posted elsewhere on Delta's website. Accordingly, this Court holds that the EU Notice is not part of Delta's passenger contract, and as such, EU 261 is not incorporated into the contract via the e-ticket.

Because the Volodarskiys have not established that EU 261 was incorporated by reference into Delta's passenger contract, they have failed to state a claim upon which relief may be granted. The complaint is dismissed.

**B.**

Delta argues that even if the Volodarskiys were able to plead a viable breach of contract claim, their claim is preempted by the Airline Deregulation Act, 49 U.S.C. §41713(b). Because the Court has concluded that the Volodarskiys did not adequately plead a contract claim, there is no need to extensively discuss the preemption issue. For the sake of completeness, it turns out that the failure of Plaintiffs to sufficiently allege that EU 261 is incorporated into the contract also serves as the basis to conclude that preemption applies.

To understand this overlap, a brief summary of the Airline Deregulation Act is necessary. In order to ensure that states would not ignore federal airline regulation in favor of regulation of their own, the Act provides that "a State, political subdivision of

12

a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). State law causes of action are preempted by the Act when (1) a state seeks to enact or enforce a law that (2) relates to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996). Suits based on state common law are included for purposes of preemption analysis. *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000).

The Supreme Court carved out an exception to preemption under the Airline Deregulation Act for routine breach of contract claims "seeking recovery solely for [an] airline's alleged breach of its own, self-imposed undertakings." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). Under *Wolens*, to avoid preemption, a breach of contract claim must be based on the parties' own contract, with no enlargement or enhancement through state laws or policies external to the agreement. *Id.* at 233. In such cases, the remedy is limited to the terms of the parties' agreement, and does not require the enforcement of a state law or policy external to the agreement. Thus, whether a claim is preempted by the Airline Deregulation Act turns on whether the right to be enforced stems from an external state law or policy or an internal restriction imposed by the parties' own agreement.

Here, Delta argues that because resolving the Volodarskiys' breach of contract claim would require the Court to look outside the parties' contract to "policies external to the agreement" (here, EU 261), the claim is preempted by the Act. Although ultimately Delta is correct that preemption applies here, the fact that a regulation is literally outside the contract's own terms does not necessarily end the inquiry. Our colleagues in this District have held that where a regulation is expressly incorporated into the terms of a contract, it is not an "external policy" for purposes of ADA preemption. *See, e.g.*, *Polinovsky v. Deutsche Lufthansa AG*, 2012 WL 1080415, at *3 (N.D. Ill. Mar. 30, 2012); *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, 2011 WL 3166159, at *3 (N.D. Ill. July 27, 2011). In *Polinovsky*, the plaintiffs brought a similar breach of contract claim against Lufthansa for its failure to comply with EU 261. In response, Lufthansa argued that the plaintiffs' claim was preempted by the Airline Deregulation Act, because EU 261 was a policy external to the contract itself. The court in *Polinovsky* disagreed, holding that because Lufthansa's contract specifically referenced EU 261 and the contract included language stating Lufthansa's intent to comply with EU 261's compensation requirements as part of the contract itself, the obligation to compensate passengers was part of Lufthansa's own undertaking. 2012 WL 1080415 at *3. As such, the court there held that the plaintiff's breach-of- contract claim fell within the *Wolens* exception and was not preempted by the Airline Deregulation Act. *Id.* Similarly, in *Giannopoulos*, the court determined that because Iberia voluntarily agreed to abide by EU 261 by incorporating it into its contract, Iberia's obligation to compensate delayed passengers was a self-imposed

14

undertaking that fits within the *Wolens* exception. 2011 WL 3166159 at *3. Moreover, because Iberia agreed in its contract to pay compensation "as established in EU 261," and because the ECJ's decision in *Sturgeon* is the binding interpretation of EU 261, Iberia's contract must be read as an agreement to abide by EU 261, as interpreted by the ECJ. *Id.* Accordingly, the court concluded that the ECJ's decision in *Sturgeon* is not external to the contract for preemption purposes. *Id.*

Based on the courts' holdings in *Polinovsky* and *Giannopoulos*, EU 261 can only be considered a self-imposed undertaking under the *Wollens* exception if it is incorporated by reference into Delta's contract. And, as discussed in the previous section, the Volodarskiys have not adequately alleged that Delta intended to incorporate EU 261 into its International Conditions of Carriage. Had Delta explicitly incorporated EU 261 into its contract as a part of the contract itself, the rationale of *Polinovsky* and *Giannopoulos* support concluding that the Volodarskiys' breach-of-contract claim is not preempted by the Act. But because the language of Delta's contract is distinguishable from that found in *Polinovsky* and *Giannopoulos*—namely, that it does not expressly mention or incorporate EU 261—the *Wollens* exception does not apply, and the Volodarskiys' breach of contract claim is preempted by the Airline Deregulation Act.[7] Thus, for the reasons discussed above, the Volodarskiys' failure to

---

[7] We note again that preemption under the ADA merely provides an alternative ground for granting dismissal.

establish Delta's clear intent to incorporate EU 261 into its contract is independently fatal to Plaintiffs' breach-of-contract claim.[8]

## IV.

For the reasons stated above, Delta's motion to dismiss [R. 17] is granted. If the Plaintiffs wish to seek leave to file an amended complaint, they must file a motion by November 26, 2012, and notice it for presentment on December 3, 2012 at 9 a.m. If no motion is filed, then dismissal will be granted with prejudice as of that date without further order of the Court. The status hearing of October 30, 2012 is reset to December 3, 2012 at 9 a.m., to track the case.

ENTERED:

Honorable Edmond E. Chang
United States District Judge

DATE: October 29, 2012

---

[8]Delta offers a third ground for dismissal based on the Volodarskiys' failure to exhaust all available remedies in the EU prior to filing suit in the United States. This Court need not reach the issue of exhaustion, since, as discussed above, the Volodarskiys' claim fails for other reasons.