**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GENNADIY VOLODARSKIY and OXANA VOLODARSKAYA on behalf of themselves and their minor children, and RICHARD COHEN on behalf of himself, and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DELTA AIR LINES, INC.,<br><br>　　　　Defendant. | No. 11 C 00782<br><br><br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Gennadiy Volodarskiy, Oxana Volodarskaya, and Richard Cohen bring this putative class action lawsuit against Defendant Delta Air Lines[1] for Delta's alleged failure to comply with Regulation No. 261/2004 of the European Parliament and European Council (EU 261).[2] In their original complaint [R. 1], the Volodarskiys asserted an Illinois breach-of-contract claim against Delta and alleged that EU 261 was incorporated into Delta's International Conditions of Carriage. In October 2012, the Court held that EU 261 was not incorporated into the contract and dismissed Plaintiffs' first complaint for failure to state a claim. R. 87, Order at 12, 16. The Volodarskiys, now joined by Richard Cohen, have since filed an amended complaint [R. 92],

---

[1]Jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

[2]Five other cases founded on similar allegations have been filed in this District by the same plaintiffs' counsel against other airlines. *See Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, No. 11 C 775; *Polinovsky v. British Airways PLC*, No. 11 C 779; *Polinovsky v. Deutsche Lufthansa AG*, No. 11 C 780; *Gurevich v. Compagnia Aereas Italiana, SPA*, No. 11 C 1890; *Lozano v. United Continental Holdings, Inc.*, No. 11 C 8258.

abandoning their breach-of-contract claim and instead raising a direct claim under EU 261. Delta now moves to dismiss Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained more fully below, Delta's motion [R. 96] is granted.

## I. Background

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Plaintiffs' favor. *Ashcroft v. al-Kidd*, —— U.S. ——, 131 S. Ct. 2074, 2079 (2011). The original putative class representatives, Plaintiffs Gennadiy Volodarskiy and his wife Oxana Volodarskaya, are Illinois residents who purchased tickets to travel with their two minor children from London's Heathrow Airport to Chicago O'Hare Airport on August 17, 2009. R. 92, First Am. Compl. ¶¶ 5-6, 18-19. Their flight was delayed at Heathrow Airport for over eight hours, and they arrived in Chicago more than eight hours after the scheduled arrival time. *Id.* ¶¶ 20, 22. The Volodarskiys were not informed of this delay any time before the scheduled departure time, and Delta did not compensate them for the delay. *Id.* ¶¶ 21, 23.

Similarly, Plaintiff Richard Cohen and his wife Inna Cohen are New Jersey residents who were confirmed passengers on a Delta flight from Paris, France to Philadelphia, Pennsylvania on November 29, 2010. *Id.* ¶¶ 7, 24. The Cohens' flight was cancelled nearly three hours after the scheduled departure time, and the Cohens were delayed more than twenty-four hours in arriving in Philadelphia. *Id.* ¶ 24. Delta also

did not compensate the Cohens. *Id.* ¶ 26. Plaintiff Cohen was added as an additional putative class representative in Plaintiffs' First Amended Complaint. *See id.* ¶ 7.

The sole claim in Plaintiffs' First Amended Complaint is a direct claim under EU 261. *Id.* ¶¶ 1, 43-45. Adopted in 2004, EU 261 requires airlines to provide standardized compensation to passengers for certain delays and cancellations of flights departing from or arriving at airports in EU Member States. *Id.* ¶¶ 1, 9-13. Because Plaintiffs did not receive compensation for their delayed and cancelled flights, they claim that Delta violated EU 261. *Id.* ¶¶ 1, 44-45.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen a ruling on a defendant's

3

motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (explaining that courts accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

Delta advances three arguments for dismissing Plaintiffs' EU 261 claim. First, Delta asserts that EU 261, by its own terms, does not provide for enforcement outside of EU Member States. Next, even if such a claim could be filed in a United States court, Delta contends that a direct EU 261 claim would be preempted by both the Airline Deregulation Act and the Montreal Convention. Finally, Delta argues that prudential considerations, such as international comity, support dismissal of Plaintiffs' amended complaint. *See* R. 97, Def.'s Br. at 5-20. Although the first of the three grounds alone warrants dismissal, it is worth addressing each of these arguments for the sake of completeness.

### A. EU 261 Cause of Action

4

Although addressed last in Delta's briefs, whether EU 261 can be directly enforced in a United States court is a threshold question that must be resolved at the outset. Both sides agree that EU 261 creates two tiers of enforcement: claims can be filed in either administrative bodies or in civil courts. Both cite paragraph 22 of EU 261's Preamble, which states:

> Member States should ensure and supervise general compliance by their air carriers with this Regulation and designate an appropriate body to carry out such enforcement tasks. The supervision should not affect the rights of passengers and air carriers to seek legal redress from courts under procedures of national law.

Regulation 261/2004, Preamble ¶ 22, 2004 O.J. (L 46) 1 [hereinafter EU 261], *available at* R. 97-1. While Delta argues that the "courts" referenced in the second sentence are only EU Member States' courts, Plaintiffs argue that these courts could be the courts of any nation, including the United States. *Compare* R. 105, Def.'s Reply Br. at 16, *with* R. 101, Pls.' Resp. Br. at 18-19. Thus, the debate is not whether Plaintiffs can file a direct claim under EU 261, but where.

In addition to the Preamble, Delta makes three arguments on why EU 261 is not enforceable outside the legal systems of EU Member States. First, Delta emphasizes that only the national courts of EU Member States can refer questions to the European Court of Justice. Def.'s Br. at 19. Next, Delta argues that enforcing EU 261 outside the EU would be inconsistent with the European principle of "subsidiarity," under which EU Member States' courts, not foreign courts, are responsible for filling procedural gaps in EU regulations. *Id.* at 19-20. Finally, Delta also points to Article 16 of EU 261, which states that "[e]ach Member State shall designate a body responsible for the

5

enforcement of this Regulation." EU 261 art. 16.1. The regulation also specifies that "each passenger may complain to any body designated under paragraph 1 [of Article 16], or to any other competent body designated by a Member State." *Id.* art. 16.2. Because the text does not explicitly authorize foreign-court enforcement actions, Delta therefore argues that this Court should decline to entertain Plaintiffs' lawsuit.

Also relying on the regulatory text, Plaintiffs reach the opposite conclusion. Plaintiffs note that the text of EU 261 includes seventeen references to "Member States." Pls.' Resp. Br. at 19. Yet in Article 15.2,[3] "competent courts or bodies" is not modified by "Member States," nor is "courts" or "national law" in paragraph 22 of the Preamble. *Id.* Plaintiffs argue that the absence of a "Member States" modifier in these provisions indicates that the European Council had no intention of limiting the forum courts and administrative bodies to those in EU Member States. *Id.*

In support of their textual argument, Plaintiffs rely on the *Iberia* and *Lufthansa* cases also pending in this District. *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, No. 11 C 775; *Polinovsky v. Deutsche Lufthansa AG*, No. 11 C 780. Those opinions held that the plaintiffs' breach-of-contract claims survived dismissal motions because the contracts had expressly incorporated EU 261. *Polinovsky v. Deutsche Lufthansa AG*, 2012 WL 1080415, at *3 (N.D. Ill. Mar. 30, 2012); *Giannopoulos v. Iberia Lineas*

---

[3]Article 15.2 states in full: "If . . . a derogation or restrictive clause is applied [in the contract of carriage] in respect of a passenger, or if the passenger is not correctly informed of his rights and for that reason has accepted compensation which is inferior to that provided for in this Regulation, the passenger shall still be entitled to take the necessary proceedings before the competent courts or bodies in order to obtain additional compensation." EU 261 art. 15.2.

6

*Aereas de Espana, S.A.*, 2011 WL 3166159, at *3 (N.D. Ill. July 27, 2011). Both opinions cited EU 261's Preamble in support of their conclusion that the regulation did not have an administrative exhaustion requirement or that the plaintiffs' contract claims could continue in U.S. courts despite possible comity concerns. *Giannopoulos*, 2011 WL 3166159, at *7; *Polinovsky*, 2012 WL 1080415, at *6-7.

But Plaintiffs' reliance on those cases to support a direct EU 261 claim is misplaced. Those cases dealt with state-law breach-of-contract claims, not direct claims under EU 261. When those opinions analyzed the Preamble, they considered the issues of administrative exhaustion and international comity, not whether plaintiffs were properly in a United States court to begin with. Indeed, as Plaintiffs note, the plaintiffs in both cases have since amended their complaints to add direct claims under EU 261, and the defendants have moved to dismissed those claims as well. *Giannopoulos*, No. 11 C 775, Dkt. No. 170 (N.D. Ill. filed Feb. 21, 2013); *Polinovsky*, No. 11 C 780, Dkt. No. 110 (N.D. Ill. filed May 1, 2013). Those motions are still pending.

Only one other case in this District has directly addressed the issue at hand. In *Lozano v. United Continental Holdings, Inc.*, the district court held that "the EU did not clearly intend to authorize a private right of action under EU 261 to file claims in courts outside the EU." 2013 WL 5408652, at *4 (N.D. Ill. Sept. 26, 2013). This Court agrees with that analysis of EU 261's text. As summarized above, the Preamble states that passengers may "seek legal redress from courts under procedures of national law," EU 261, Preamble ¶ 22, and Article 15.2 states that passengers may file claims before "competent courts," *id.* art. 15.2. In isolation, these snippets could be read to provide

7

a right to file a direct EU 261 claim in the courts of any country. But when read in the full context of the entire regulation, the "courts" referred to by EU 261's various provisions are EU Member States' courts, which would hear claims under procedures of each Member State's national laws. The regulation's enforcement provisions are all directed at mechanisms *of* the Member States. Consider first that Article 16, the regulation's enforcement provision, states that Member States are responsible for designating administrative enforcement bodies that will enforce the provision. *Id.* art. 16.1 ("Each Member State shall designate a body responsible for the enforcement of this Regulation . . . ."). Those administrative bodies are Member-State agencies; it is not as if EU 261 tasked a United States agency with its enforcement. What's more, Article 16 contains a caveat that the availability of these administrative bodies should not preclude any passengers from also filing complaints with "any other competent body *designated by a Member State.*" *Id.* art. 16.2 (emphasis added). Again, that text can only mean that the enforcement of EU 261 is directly tied to courts and administrative bodies in the EU. Indeed, the regulation is explicit in saying that it does *not* apply if a passenger departing from an airport in a "third country" (that is, a non-Member State country) unless they "received benefits or compensation and were given assistance in that third country." *Id.* art. 3.1(b). So the one time that EU 261 refers to benefits or compensation in a non-Member State country, EU 261 says that the

regulation does *not* apply. In short, by its own terms, EU 261 does not provide a cause of action that can be brought in the courts of non-Member States.[4]

Plaintiffs' efforts to rebut *Lozano*'s reasoning are not persuasive. First, Plaintiffs rely on *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066 (D.C. Cir. 2012). Plaintiffs assert that *McKesson* demonstrates that when a private right of action exists under foreign law, that action can be pursued in a United States court "absent express language in the source law prohibiting such forum." R. 120, Pls.' Supp. Br. at 3. But that description of *McKesson* overlooks an important factual distinction between *McKesson* and this case.

In *McKesson,* the D.C. Circuit held that the Treaty of Amity between the United States and the Islamic Republic of Iran, as construed under Iranian law, provided the plaintiff with a cause of action against Iran. 672 F.3d at 1078, 1080. The court of appeals also held that the Iranian-based cause of action could proceed in a United States court because the two countries had explicitly agreed in the Treaty that courts in either country could hear claims brought under the Treaty. *See id*. at 1078.

---

[4]Although the parties did not address this question in their briefs, Delta's argument raises a more fundamental question: even if EU 261 were crystal clear that United States courts are competent to enforce the regulation, would there be a claim cognizable in this country's courts? In other words, what would be Plaintiffs' basis, under United States federal law, for such a lawsuit (even assuming subject matter jurisdiction based on diversity of citizenship)? And if there is no basis under United States federal law, then what is the nature of the claim? Is it, as Plaintiffs argue, a "direct" claim under EU 261? If that type of foreign-law claim is cognizable here, then would that mean that a United States court could hear a claim under any other nation's laws, whether statutory, regulatory, or common law? The Court need not address this more fundamental question because the text of EU 261 is sufficiently clear that authorization to entertain suits under EU 261 is confined to Member States. But it is not self-evident that this cause of action could be cognizable in a United States court absent any treaty obligations to the contrary, as discussed below.

9

Specifically, the Treaty stated: "Nationals and companies of either High Contracting Party shall have the freedom of access to the courts of justice and administrative agencies within the territories of the other High Contracting Party . . . both in defense and pursuit of their rights . . . ." *Id.* (internal quotation marks and citation omitted). Thus, it was not just that the Treaty did not *prohibit* claims in U.S. courts, but also that the Treaty expressly *authorized* those claims. Here, by contrast, the United States has no treaty obligations to entertain disputes arising from EU 261, nor does EU 261 authorize enforcement in United States courts. In short, *McKesson* does not support Plaintiffs' interpretation of the regulation.

In a final argument to save the direct EU 261 claim, Plaintiffs argue that "[f]undamentally, this is a choice of law issue." Pls.' Supp. Br. at 4. They reason that because EU 261 applies to delays of flights originating from EU airports, a United States court must apply EU 261 in a claim for compensation for such a delay. *See id.*; *see also* Pls.' Resp. Br. at 19. Plaintiffs' argument, however, skips one essential threshold issue. A choice-of-law issue presupposes that Plaintiffs have properly stated a claim that is cognizable in this Court (or any other United States court). But as discussed above, the Court has concluded that Plaintiffs' direct EU 261 claim cannot be brought in a United States court. In short, the issue facing the Court is separate and apart from any choice-of-law questions.

Yet, the bulk of the cases Plaintiffs string cite in their supplemental brief deal only with choice-of-law and *forum non conveniens* issues. *See* Pls.' Supp. Br. at 4-6 (citing cases). Unlike here, in almost all of those cases, there was an underlying cause

10

of action based on domestic or maritime law. For example, in *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, the underlying cause of action was based on American antitrust law. 731 F.2d 909, 915 (D.C. Cir. 1984). On appeal, the D.C. Circuit was considering the impact of a British injunction barring the plaintiff's American lawsuit. *Id.* So the court was not considering the question in front of this Court: whether a foreign law provides a cause of action that can be enforced in a United States court.[5]

The only two cases that Plaintiffs cite that might have any connection to the issue here are not persuasive. *See* Pls.' Supp. Br. at 5-6 (citing *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 2013 WL 1224893 (D.D.C. Mar. 27, 2013); *Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 2009 WL 3049604 (S.D.N.Y. Sept. 23, 2009)). *Ancile* is an example of a foreign-law cause of action, but there was no analysis of the issue because the parties apparently did not argue it. Although two of the plaintiff's claims arose directly under the Brazilian Civil Code, 2009 WL 3049604, at *2, the district court did

---

[5]The other cases that Plaintiffs cite are similarly inapplicable. *See DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 799 (4th Cir. 2013) (reviewing a dismissal based on *forum non conveniens* in a wrongful death action and survivorship claim); *Rationis Enters. Inc. of Pan. v. Hyundai Mipo Dockyard Co., Ltd.*, 426 F.3d 580, 583-84 (2d Cir. 2005) (resolving a choice-of-law question in a limitation-of-liability proceeding); *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1356-57 (8th Cir. 1994) (resolving a choice-of-law question in a products liability lawsuit); *Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 64 (2d Cir. 1981) (reviewing a dismissal based on *forum non conveniens* in a suit involving tortious interference, fraud, trade secrets, and conspiracy claims); *Mobil Tankers Co., S.A. v. Mene Grande Oil Co.*, 363 F.2d 611, 612-13 (3d Cir. 1966) (reviewing a dismissal based on *forum non conveniens* in an admiralty suit); *Giner v. Estate of Higgins*, 2012 WL 123973, at *4 (W.D. Tex. Jan. 13, 2012) (resolving a choice-of-law question in a contract dispute); *Ludgate Ins. Co. Ltd. v. Becker*, 906 F. Supp. 1233, 1235 (N.D. Ill. 1995) (considering defendant's motion to dismiss based on *forum non conveniens* grounds in a lawsuit involving a breach of fiduciary duty); *Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.*, 422 F. Supp. 405, 406-07 (N.D. Ill. 1976) (resolving a choice-of-law question in a personal injury lawsuit).

not consider whether such claims were cognizable in a United States court. And in *Intelsat*, the district court considered whether it could entertain a lawsuit based on the extraterritorial application of Canadian trademark law. 2013 WL 1224893, at *14. Setting aside *Intelsat*'s categorization of the extraterritoriality issue as a subject matter jurisdiction question,[6] the question here is not whether EU 261 applies extraterritorially. Here, Plaintiffs seek to apply EU 261 to flight delays that happened in the EU. There is no extraterritoriality issue. Instead, the problem is that Plaintiffs seek to enforce their rights under an EU regulation in a United States court. The court in *Intelsat* did not reach that question, and in fact, ordered "additional briefing on the Canadian law issue." *Id.* at *16.

In sum, the Court concludes that EU 261 does not provide a private right of action that can be enforced in courts outside the EU. Therefore, the Court grants Delta's motion to dismiss Plaintiffs' First Amended Complaint, this time with prejudice in light of the two failed attempts to state a claim.

**B. Preemption**

Because EU 261's text itself requires dismissal of the claim, the Court need not address the other arguments that Delta raised in support of its motion. But given the ever-present possibility of an appeal, the Court considers those arguments now so that the appellate court will have a more complete set of rulings.

---

[6]Whether a law can be applied extraterritorially is a merits question, not a question of jurisdiction. *See Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010).

As an alternative argument to support its dismissal motion, Delta argues that Plaintiffs' EU 261 claim is preempted by the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b). The Court's analysis begins and ends with the express language of the ADA's preemption provision: "[A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The Act also provides an unambiguous definition of the term "State": "'State' means a State, the District of Columbia, and a territory or possession of the United States." § 41713(a); *see also Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition . . . ." (citations omitted)).

Although here it fails for other reasons, a direct claim under EU 261 would not be preempted by the ADA. As explained by the district court in *Gurevich v. Compagnia Aereas Italiana, SPA*, "Regulation [EU] 261 is not enacted or enforced by a 'State' as defined by the Act." No. 11 C 1890, R. 83, slip op. at 3 (N.D. Ill. Sept. 13, 2013). Therefore, if Plaintiffs could enforce their rights under EU 261 in this Court (which, to be clear, this Court now holds they cannot), the Airline Deregulation Act would not preempt that claim.

Delta's only textual argument against reaching this result is that the statute proscribes "enforc[ing]" any regulation that affects an airline's prices or services. Def.'s Br. at 8 (citing § 41713(b)). While it is true that "a law, regulation, or other provision"

13

is not directly modified by the word "State," when the provision is read as a whole, it is clear that a State is the political body that would be enacting or enforcing its own laws and regulations. In other words, for preemption to be triggered, the law in question must be of a State, which the statute clearly defines. Other sub-sections of the provision support this interpretation. *See, e.g.*, § 41713(b)(3) (recognizing that the preemption provision does not limit a *State* from "carrying out its proprietary powers and rights"). Read this way, the word "enforce" in the provision still has meaning outside of entertaining lawsuits brought under foreign law: "enforce" extends the scope of the preemption provision to state common-law claims. *See United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000) (recognizing that suits based on state common law are included for purposes of preemption analysis).

Delta also argues that Plaintiffs' amended complaint presents essentially the same preemption issues as the breach-of-contract claim the Court already dismissed. Def.'s Br. at 1, 7. According to Delta, since the ADA preempted Plaintiffs' state-law contract claim because it required examination of EU 261, Plaintiffs EU 261 claim should be similarly preempted because the same underlying law is involved. *Id.* at 1. In support of its argument, Delta cites several cases where courts have held that a breach-of-contract claim was preempted when the resolution of the claim would have required interpreting foreign law. *Id.* at 6 (citing *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600-01 (5th Cir. 2010) (holding breach-of-contract claim was preempted); *Sanchez v. Aerovias de Mexico, S.A. De C.V.*, 590 F.3d 1027, 1030-31 (9th Cir. 2010) (same); *Polinovsky v. British Airways, PLC*, 2012 WL 1506052, at *3 (N.D. Ill. Mar. 30, 2012)

14

(same)). Just as Plaintiffs' reliance on *Giannopoulos* and *Polinovsky v. Deutsche Lufthansa* was misplaced, so too is Delta's reliance on the contract cases it cites. The common denominator requiring a finding of preemption in those cases was not the need to apply and enforce *foreign* law; the contract claims would just as easily have been preempted if the courts would have had to interpret domestic law, as in two other cases that Delta cites. *See* Def.'s Br. at 8 (citing *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 36-37 (1st Cir. 2007) (holding breach-of-contract claim preempted because contract did not explicitly incorporate a federal-law provision); *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 755-56 (Tex. 2003) (holding breach-of-contract claim preempted because the plaintiff tried to enlarge the federal rights that were incorporated into the contract)). Instead, the claims were preempted because the *State* common-law claims did not fall within the *Wolens* exception. *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995) (carving out an exception to preemption under the ADA for routine breach-of-contract claims "seeking recovery solely for [an] airline's alleged breach of its own self-imposed undertakings").

Here, the preemption provision does not even apply because there are no *State* claims under the statute's unambiguous definition. Because their contract with Delta did not explicitly incorporate EU 261 and therefore did not fall under the *Wolens* exception, *see* Order at 13, 15, Plaintiffs' Illinois breach-of-contract claim was a "State" law cause of action that was preempted by the ADA. But now, there is no "State" statutory or common-law claim; instead, there is a claim under a foreign law, which

does not fall with the scope of the preemption provision. The difference in the underlying cause of action is dispositive.

Finally, to preserve an argument, Delta argues in a footnote that the Montreal Convention independently preempts Plaintiffs' claim. Def.'s Br. at 8 n.2; Def.'s Reply Br. at 16 n.3. Delta does not develop this argument beyond the footnote, and only cites a string of district court opinions finding that the Montreal Convention completely preempts claims related to the subject matter of the treaty. Def.'s Br. at 8 n.2 (citations omitted). These cases have no bearing on the question here. Despite its name, complete preemption is a narrow jurisdictional doctrine and does not actually concern the substantive question of preemption. If it applies, the doctrine supports removal to federal court "when a federal statute wholly displaces the state-law cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Here, complete preemption has no applicability because Plaintiffs are already properly in federal court on the basis of diversity jurisdiction.

Were it to reach the question, though, the Court would also reject Delta's Montreal Convention argument. Article 29 of the Montreal Convention provides: "In the carriage of passengers, baggage and cargo, any action for damages . . . can only be brought subject to the conditions and such limits of liability as are set out in this Convention . . . . In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable." Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, 2242 U.N.T.S. 350 art. 29, *available at* 1999 WL 33292734, at *38. In short, Article 29 prohibits only non-

16

compensatory damages. The Seventh Circuit has held that the Warsaw Convention, the Montreal Convention's predecessor, was not a complete bar to all suits related to airline services; instead, only those claims that were inconsistent with its provisions would be preempted. *See Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 785 (7th Cir. 2008). Courts in this District have applied this analysis to the Montreal Convention, which has a substantially identical preemption provision. *See, e.g., Gurevich*, No. 11 C 1890, R. 83, slip. op. at 4; *Giannopoulos*, 2011 WL 3166159, at *4-5; *Cosgrove-Goodman v. UAL Corp.*, 2010 WL 2197674, at *3 (N.D. Ill. June 2, 2010); *Narkiewicz-Laine v. Scandinavian Airlines Sys.*, 587 F. Supp. 2d 888, 890 (N.D. Ill. 2008). Here, Plaintiffs only seek "actual, compensatory damages" as determined by the "standardized compensation" provided under EU 261. First Am. Compl. ¶¶ 9, VI.B; *see also id.* ¶¶ 44-45. Thus, Plaintiffs' claim is not inconsistent with the Montreal Convention.

**C. Comity and Other Prudential Concerns**

Delta's final argument (again, this is addressed for completeness's sake) is that this case should be dismissed on international comity grounds. Def.'s Br. at 9-19. First, it emphasizes that the EU and its Member States do not allow U.S.-style class-action procedures. *Id.* at 10-14. Delta claims that this "mix-and-match approach"—enforcing EU substantive rights with a United States procedural device—is evidence that Plaintiffs are engaged in forum shopping. *Id.* at 14. Delta also asserts that allowing this case to proceed in a U.S. court would interfere with the EU's regulatory scheme. *Id.* at 12. Finally, Delta argues that comity concerns are heightened because EU

Member States have inconsistently enforced EU 261 in multiple languages and using interpretive principles that United States courts do not apply. *Id.* at 14-19. As discussed below, assuming cognizable claims, these arguments are not persuasive and the Court would exercise jurisdiction.

Comity "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation . . . ." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895). Comity concerns are particularly relevant when there are parallel proceedings in domestic and foreign courts. *See In re Rimsat, Ltd.*, 98 F.3d 956, 963 (7th Cir. 1996) ("Comity is a doctrine of adjustment, not a mandate for inaction. In the case of parallel inconsistent proceedings in domestic and foreign courts, one must yield . . . .").

If the Court's earlier analysis is wrong and EU 261 does authorize filing private claims outside of the EU, the Court would not decline jurisdiction for comity purposes. First, United States citizens are on both sides of the dispute. On top of that, there are no parallel claims by Plaintiffs against Delta pending in any European courts or administrative bodies. And as the facts of the lawsuit stand now, this Court would only have to interpret the case law of England and France, a manageable task. *See* First Am. Compl. ¶¶ 19, 24. To be sure, if additional class members' claims later implicated the conflicting opinions of numerous other EU Member States, that complexity would have to be addressed at the class-certification stage (and might be fatal to class

certification). But that potential complexity would not be a reason to decline jurisdiction, at this time, on comity grounds.

And as to Delta's concerns about the purported mismatch between EU substantive law and American procedural mechanisms, that sort of inconsistency is simply a possibility in any lawsuit based on diversity jurisdiction. It is an elementary rule of federal civil procedure that when a federal court sits in diversity, it must apply state substantive law and federal procedural law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). The *Erie* rule does not change when there is a putative class action. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("Rule 23 *automatically* applies 'in all civil actions and proceedings in the United States district courts.'" (quoting Fed. R. Civ. P. 1)). This remains true even when the underlying substantive rule explicitly prohibits class actions. *See id.* at 398-401 (holding that Rule 23 applied even when the New York statute providing the cause of action prohibited class relief). Therefore, if EU 261 were cognizable in a United States court, the potential availability of the class-action mechanism would not be a factor that this Court would consider in evaluating whether it should refuse to exercise jurisdiction because of comity concerns.

## IV. Conclusion

For the reasons stated above, Delta's motion to dismiss [R. 96] is granted, and Plaintiffs' First Amended Complaint [R. 92] is dismissed with prejudice.

ENTERED:

_Edmond E. Chang_
Honorable Edmond E. Chang
United States District Judge

DATE: October 16, 2013